IAMES, Appellant and Cross–Appellee,

v.

MURPHY et al., Appellees and Cross–Appellants.

[Cite as *Iames v. Murphy* (1995), 106 Ohio App.3d 627.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–940693, C–940724 and C–940725.

Decided Sept. 29, 1995.

*Katzman, Logan & Halper* and *Steven D. Halper*, for appellant and cross-appellee.

*Beckman, Weil, Shepardson & Faller* and *Richard M. Hopple*, for appellee and cross-appellant Philip Murphy.

*Freund, Freeze & Arnold* and *Gordon D. Arnold*, for appellee and cross-appellant Walt Byers.

PAINTER, Judge.

## I. Facts

While driving on November 2, 1990, Philip Murphy struck and seriously injured Marvin Iames, a pedestrian, who had walked onto Blue Rock Road. Philip Murphy was returning from delivering food for the Fifth Amendment restaurant owned and operated by Walt Byers. At the time of the accident, Iames, the pedestrian, had a blood-alcohol content close to three times the legal limit for driving a car.

Murphy regularly performed delivery services for Byers. Murphy was responsible only for making deliveries, and Byers paid him twenty dollars per night for roughly three and a half to four hours on duty. Murphy normally used his own car, but on this occasion he used Byers's wife's car because his own car was inoperable.

Iames brought an action against Murphy and Byers for damages consisting of $112,782.60 in medical bills, pain and suffering, and permanent impairment. Prior to the trial, Iames filed a motion for summary judgment alleging that Murphy was an employee of Byers. Byers filed a motion for summary judgment alleging that Murphy was an independent contractor for Byers. The trial judge granted Iames's motion, ruling that Murphy was an employee. In the jury trial, witnesses to the accident gave conflicting testimony with respect to how the accident occurred, but not with respect to the injuries, treatment or medical bills. The jury found Iames fifty percent negligent and the defendants fifty percent negligent, then curiously awarded $112,782.60, the exact amount of the medical bills. Accordingly, under the comparative negligence statute, R.C. 2307.31, the trial court entered judgment for fifty percent of the verdict, $56,391.30. Iames moved for a new trial solely on damages, but the trial court denied that motion. From this decision, Iames appealed, and Murphy and Byers cross-appealed.

## II. Assignments of Error

In his sole assignment of error, Iames argues that the trial court erred in denying Iames's motion for new trial on the issue of damages because the judgment was exactly one-half of Iames's medical bills, with no compensation for pain and suffering or permanent impairment, indicating that the jury lost its way or misperceived its role.

Byers asserts three assignments of error in his cross-appeal. First, Byers asserts that the trial court erred by denying his motion for summary judgment and granting Iames's motion for summary judgment regarding Murphy's employment status. Second, Byers asserts that the trial court erred by overruling his motion for directed verdict at the close of all evidence. Third, Byers argues that the jury verdict was against the manifest weight of the evidence. In his cross-appeal, Murphy joins Byers in asserting the second and third assignments of error asserted by Byers.

## III. Motion for New Trial

We will first address Iames's motion for new trial. Trial courts have broad discretion in determining whether to order a new trial. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19. Therefore, the standard of review of a trial court's denial of a motion for a new trial is abuse of discretion. *Yungwirth v. McAvoy* (1972), 32 Ohio St.2d 285, 61 O.O.2d 504, 291 N.E.2d 739; *Bailey v. Allberry* (1993), 88 Ohio App.3d 432, 624 N.E.2d 279. Abuse of discretion connotes more than an error of law. It implies that the court was unreasonable, arbitrary, or unconscionable. *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855; *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144. We agree with the Second District Court of Appeals, which held:

"[I]n order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim." (Emphasis deleted.) *Bailey, supra,* 88 Ohio App.3d at 435, 624 N.E.2d at 280, citing *Sharp v. Clark* (May 20, 1992), Darke App. No. 1285, unreported, 1992 WL 107849 (citing *Sherer v. Smith* [1949], 85 Ohio App. 317, 322–323, 40 O.O. 210, 212, 88 N.E.2d 426, 428–429, citing *Toledo Rys. & Light Co. v. Mason* [1910], 81 Ohio St. 463, 91 N.E. 292).

Iames asserts that each of these grounds applies to the facts in this case in his attempt to obtain a new trial with respect to damages. We do not accept

Iames's argument that the verdict is so gross as to shock the sense of justice and fairness. The jury *may have* been unduly influenced by Iames's alcohol consumption. The jury also *may have* felt sympathy for Iames due to his age and poor health. Passion or prejudice *could have* influenced the jury's decision with respect to liability as well as with respect to damages, and either in favor of Iames or in favor of Murphy and Byers. The jury *could have* mixed the issues in liability with the issues in damages so as to render this result. However, any of these possibilities is pure speculation. The jury was charged with sorting the facts. Many factors present in the voluminous record contributed to varying degrees to the jury's decision. From the evidence presented, we cannot say that this verdict is so gross as to shock our sense of justice and fairness.

■ However, we do agree that the damages cannot be reconciled with the amount of the medical bills, evidence of pain and suffering, and evidence of permanent impairment. From the record, we find abundant reference to Iames's pain and suffering and permanent impairment. Rather than dispute these facts, the defendants argue that because Iames failed to test the jury verdict with interrogatories, the "similarity" between Iames's medical expenses and the jury award failed to establish conclusively that the jury ignored pain and suffering and permanent impairment. We find this argument specious. The jury awarded an amount exactly equal to Iames's medical bills. The jury obviously did not calculate this amount to satisfy not only the medical bills, but also pain and suffering, and permanent impairment only to have that amount "coincidentally" identical to the medical bills.

We believe that the damages awarded are more likely the result of either the jury's improperly failing to include pain and suffering and permanent impairment in the damages, or the jury's improperly mixing issues of liability and damages. Without interrogatories identifying the components of the award, we find it difficult to know what led the jury to calculate damages exactly equal to the medical bills. However, we do hold that clearly the jury did not fully compensate Iames for his losses after finding that the defendants were fifty percent liable. *Fantozzi v. Sandusky Cement Prod. Co.* (1992), 64 Ohio St.3d 601, 612, 597 N.E.2d 474, 482; *Miller v. Irvin* (1988), 49 Ohio App.3d 96, 550 N.E.2d 501. Therefore, the trial court abused its discretion by failing to grant a new trial.

■ We must next decide whether a new trial should have been granted on all issues or if a new trial should have been granted on damages only. As we have already stated, either the jury improperly failed to include pain and suffering and permanent impairment in the damages, or improperly mixed issues of liability and damages. We are unable to ascertain from the record what factors were most crucial to the jury verdict. It would be patently unfair to the defendants to allow a new trial on damages only. We agree with the defendants that one

cannot presume that the jury was prejudiced against Iames for drinking any more than one can presume that the jury sympathized with his plight at the time of trial. *United States v. Powell* (1984), 469 U.S. 57, 65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461, 468; *State v. Woodson* (1985), 24 Ohio App.3d 143, 24 OBR 231, 493 N.E.2d 1018.

■■ A new trial on damages alone is usually granted only when liability is not contested. See, *e.g., Mast v. Doctor's Hosp. North* (1976), 46 Ohio St.2d 539, 75 O.O.2d 556, 350 N.E.2d 429; *Bailey, supra; Slivka v. C.W. Transport, Inc.* (1988), 49 Ohio App.3d 79, 550 N.E.2d 196. When a new trial is granted, it must encompass all issues that come into doubt by the tainted verdict. In this case, the jury's reasoning with respect to comparative negligence between Iames and the defendants as well as with respect to the damage award is in doubt based on the general verdict. Perhaps interrogatories could have cleared up some of these issues, but neither party used them to test the jury's reasoning. Therefore, we sustain the assignment of error for a new trial, but we remand the case for a new trial on all issues, not merely on damages.

### IV. Motions for Summary Judgment on Murphy's Employment Status

We now turn to Byers's first assignment of error in the cross-appeal. Byers argues that the trial court erred by denying his motion for summary judgment and granting Iames's motion for summary judgment regarding Murphy's employment status. Iames argued that Murphy was an employee of Byers, while Byers argued that Murphy was an independent contractor.

■ Summary judgment is appropriate when no genuine issue of material fact remains to be litigated and the moving party is entitled to judgment as a matter of law after all of the evidence is construed in favor of the nonmovant. Civ.R. 56; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Where the evidence is not in conflict, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the trial court. *Schickling v. Post Publishing Co.* (1927), 115 Ohio St. 589, 155 N.E. 143; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881.

■ An independent contractor is one who contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the result of his work. *Councell v. Douglas* (1955), 163 Ohio St. 292, 56 O.O. 262, 126 N.E.2d 597; *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 15 OBR 145, 472 N.E.2d 335. Conversely, if the employer has the right to control either the means or the manner of conducting the work, then the worker is an employee. *Councell, supra.* Thus, we must look at the amount of control Byers exerted over Murphy.

 Murphy worked at Byers's restaurant a few nights a week for a nightly wage of twenty dollars. Murphy was directed to sit in the pantry throughout the work period until Byers directed him to make a delivery to a particular customer. Murphy usually used his own vehicle for the deliveries, but on this occasion, he used Byers's wife's car.[1] However, Murphy did not contract by the delivery or by the mile. When Murphy was on duty, he was required to sit in the pantry for the evening. Murphy made no deliveries for any other restaurant. The record does not indicate whether Murphy used "his" car primarily for the purpose of making deliveries as in the case of an independent truck driver or taxi driver.

Byers makes much of the fact that Murphy paid for his own gasoline and for the maintenance of his vehicle. We find this fact no more persuasive than if the servers on the floor of the restaurant used their own shoes and paid for the food that kept them going. Murphy amounted to a "waiter on wheels" for Byers's restaurant.

There is no doubt that Byers retained the right to control Murphy on the evenings that Murphy came to work. See *Zender v. Motorists Mut. Ins. Co.* (Jan. 3, 1991), Franklin App. No. 90AP-167, unreported, 1991 WL 634. Byers required Murphy to sit in the pantry and wait for orders. Byers directed when and where deliveries were to be made. Byers paid Murphy a nightly wage. We therefore agree with the trial court that Murphy was, as a matter of law, an employee, not an independent contractor, and overrule this assignment of error.

## V. Motions for Directed Verdict

We will take Murphy's first and Byers's second assignments of error together. They assert that the trial court erred by overruling their motions for directed verdict at the close of the evidence.

 The law requires the trial court to construe the evidence most favorably to the nonmovant and still hold for the movant as a matter of law to sustain a motion for directed verdict. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935. In this case, substantial evidence shows that Iames was negligent. Substantial evidence also shows that Murphy was negligent. The reliability of the evidence is a matter for the jury. Therefore, we overrule both Byers's and Murphy's assignments of error on cross-appeal regarding the denial of their motions for a directed verdict.

---

1. While Byers argues that Murphy did not have permission to use the car at the time of the accident, the record clearly indicates that Murphy previously had permission for delivery purposes.

### VI. Manifest Weight of the Evidence

Murphy's second and Byers's third assignments of error assert that the jury verdict was against the manifest weight of the evidence.

In determining whether a judgment is against the manifest weight of the evidence, we must review the record, weigh the evidence, consider the credibility of witnesses, and then making all reasonable inferences determine whether the judgment is supported by some competent, credible evidence going to all of the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. A jury verdict must be so contrary to the evidence that it results in a complete violation of substantial justice before a reviewing court will reverse. *CB Transp. Serv., Inc. v. Newman* (1993), 87 Ohio App.3d 436, 622 N.E.2d 431.

The jury in this case was charged with sorting the facts. Many factors present in the voluminous record contributed in varying degrees to the jury's decision. More than one eyewitness stated that the pedestrian, Iames, was clearly visible and that the driver, Murphy, was speeding. We hold that these facts allowed the jury to find that Murphy was driving negligently. The jury must have weighed these facts against those presented by the experts and other witnesses to determine the relative negligence between Murphy and Iames. As stated earlier, the jury could have been unduly influenced in any number of ways. However, these possibilities are speculative at best. The testimony of the eyewitnesses was sufficient to sustain a verdict finding Murphy fifty percent negligent as this jury found. Therefore, after carefully considering the testimony of all of the witnesses, we hold that the jury verdict is not against the manifest weight of the evidence. We overrule this assignment of error, though, of course, we have already determined to grant a new trial for other reasons.

### VII. Conclusion

Therefore, we sustain Iames's sole assignment of error and overrule all of the assignments of error asserted in the cross-appeals.

The judgment of the trial court is reversed in the appeal numbered C–940693 and the cause is remanded for a new trial on all issues, not merely damages. We affirm the judgment in the cross-appeals numbered C–940724 and C–940725.

*Judgment accordingly.*

GORMAN, P.J., and M.B. BETTMAN, J., concur.